# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARDI COMBS-HARTSHORN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TIM BUDZ, in his individual and official ) <br> capacities; JOE DORSEY, in his individual ) <br> and official capacities; DOUG COLLINS, ) <br> in his individual and official capacities; ) <br> JACK GRAHAM, in his individual and ) <br> official capacities; ANGELA BRATCHER, ) <br> in her individual and official capacities; ) <br> KENNETH DUNN, in his individual and ) <br> official capacities; TARRY WILLIAMS, ) <br> in his individual and official capacities; ) <br> DAVID SWAFFORD, in his ) <br> individual capacity; and LINDA DUNN, in ) <br> her individual capacity, ) <br> ) <br> Defendants. ) | Case No. 05 C 2872 <br><br> Hon. John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is the motion, filed on behalf of the State Defendants (Tim Budz, Joe Dorsey, Doug Collins, Jack Graham, Angela Bratcher, Kenneth Dunn, and Tarry Williams, in their individual and official capacities), to dismiss all counts of the Plaintiff's Third Amended Complaint. Plaintiff, Mardi Combs-Hartshorn, brought a seventeen-count Complaint. Counts I through IX allege that various State Defendants, while in some counts acting alone and in others as co-conspirators, violated Plaintiff's First and Fourteenth Amendment rights; Count X raises a state law claim for malicious prosecution against Defendant K. Dunn; Counts XI through XIV raise various state law claims against Defendant Budz; Counts XV and XVI raise state law

claims for civil conspiracy against Defendants Budz, Swafford, L. Dunn, Bratcher, Collins, Dorsey, and Graham; and Count XVII complains that Defendants Budz, Collins, and Graham violated the Illinois State Officials and Employees Ethics Act. (3rd Am. Compl. pp. 15-21).

## FACTUAL BACKGROUND

For purposes of this opinion and order, the following conduct stated in Plaintiff's Third Amended Complaint is taken as true.

Defendant Tim Budz is the Facility Director of the Illinois Department of Human Services Treatment and Detention Facility ("IDHS-TDF") for sexually violent persons in Joliet, Illinois. (3rd Am. Compl. ¶ 2). Defendants Joe Dorsey, Doug Collins, and Jack Graham are Executive II supervisors at the IDHS-TDF who are responsible for supervising Security Therapist Aids ("STAs") and residents at the facility. (3rd Am. Compl. ¶¶ 3-5). Defendant Angela Bratcher, a STA Sergeant at the Detention Facility, is also responsible for supervising STAs and residents at the facility. (3rd Am. Compl. ¶ 6). Defendant Tarry Williams is an IDHS-TDF investigator responsible for investigating the actions of IDHS-TDF employees and facility residents, and Defendant Kenneth Dunn is an Illinois State Police ("ISP") investigator. (3rd Am. Compl. ¶¶ 7-8). Defendant Linda Dunn is the wife of Defendant David Swafford, a current resident at the IDHS-TDF. (3rd Am. Compl. ¶¶ 9-10, 39).[1]

On May 7, 2001, IDHS hired Plaintiff to work as a STA at the Detention Facility. (3rd Am. Compl. ¶ 14). Plaintiff worked at the Detention Facility from May 7, 2001, through January 6, 2003, when she suffered a work-related injury to her right wrist after which she was

---

[1] Defendants Dunn and Swafford do not join in this Motion to Dismiss.

unable to perform her work. (3rd Am. Compl. ¶ 25). During her employment with IDHS-TDF, Plaintiff never received written, verbal, or other disciplinary warnings. (3rd Am. Compl. ¶ 15).

Beginning in February 2002, Defendant Bratcher began to harass the Plaintiff by yelling at her over a facility-wide radio, restricting Plaintiff's job duties, and humiliating her. (3rd Am. Compl. ¶ 16). On February 5, 2003. Defendant Bratcher broke into Plaintiff's car, stole her cell phone, driver's license, wallet, and "keyed" her vehicle. (3rd Am. Compl. ¶ 17). Defendant Bratcher also asked at least two IDHS-TDF residents to participate in a scheme to plant marijuana on the Plaintiff in an attempt to have Plaintiff terminated from her position. (3rd Am. Compl. ¶ 17). Defendant Bratcher took these actions after learning that Bratcher's boyfriend was romantically interested in Plaintiff. (3rd Am. Compl. ¶ 16).

Plaintiff discussed Defendant Bratcher's behavior with the IDHS-TDF director, Defendant Budz. (3rd Am. Compl. ¶ 18). No disciplinary or corrective action was taken against Defendant Bratcher. (3rd Am. Compl. ¶ 18).

On March 4, 2002, Plaintiff was informed that Defendant Bratcher had accused Plaintiff of having an inappropriate relationship with an IDHS-TDF resident. (3rd Am. Compl. ¶ 19). The Illinois State Police investigated the allegations and found them to be false. (3rd Am. Compl. ¶ 19).

In May 2002, due to the discord between Plaintiff and Defendant Bratcher, Plaintiff was transferred to the midnight shift. (3rd Am. Compl. ¶ 20). Within days of starting the midnight shift, Defendant Dorsey began sexually harassing Plaintiff. (3rd Am. Compl. ¶ 21). Defendant Dorsey often "bumped" into Plaintiff, stared at her breasts, and patted her buttocks. (3rd Am. Compl. ¶ 21). Plaintiff repeatedly asked Defendant Dorsey to stop the behavior and also

complained about Defendant Dorsey's behavior to Director Budz and the Equal Employment Opportunity ("EEO") officer, but neither Defendant Budz nor the EEO officer took any affirmative action to prevent or correct the harassment. (3rd Am. Compl. ¶ 21).

In 2002, an inmate of the facility wrote to various state and federal officials, complaining that various supervisors at the facility were soliciting himself and other residents to "set up" Plaintiff by planting marijuana in her clothing. (3rd Am. Compl. ¶ 23).

On or about January 6, 2003, Plaintiff suffered a work-related injury to her right wrist. (3rd Am. Compl. ¶ 25).

On April 10, 2003, Plaintiff was subpoenaed by an inmate to testify at a detention hearing. (3rd Am. Compl. ¶ 27). Plaintiff was threatened beforehand by her supervisors, Defendants Collins and Graham, who asked her to testify against the inmate or face job consequences. (3rd Am. Compl. ¶ 27). Plaintiff informed her supervisors that she would answer any question asked truthfully because the resident's hearing dealt with an issue of public safety. (3rd Am. Compl. ¶ 27). Plaintiff was not allowed to testify at the hearing on the specified date and was informed that she would be called to testify at a later date. (3rd Am. Compl. ¶ 27). Defendant Budz knew about and endorsed Defendants Collins' and Graham's threats to terminate Plaintiff if she did not testify negatively against the resident. (3rd Am. Compl. ¶ 28). Defendant Budz did not want Plaintiff to be truthful at the hearing. (3rd Am. Compl. ¶ 28). On February 15, 2006, Plaintiff testified, pursuant to the continued subpoena from April 10, 2003, at a "detention" hearing on behalf of a detained person in *People v. Brad Lieberman*, Circuit Court of Cook County - Criminal Division Case No. 80 CR 80001. (3rd Am. Compl. ¶ 27).

On May 13, 2003, a search of one of the IDHS-TDF residents', Defendant Swafford's, room revealed that he was in possession of two cellular phones allegedly given to him by Plaintiff in violation of IDHS-TDF regulations. (3rd Am. Compl. ¶¶ 36-37). Defendant Budz placed Plaintiff on administrative leave for alleged official misconduct on May 13, 2003. (3rd Am. Compl. ¶ 31).[2]

Defendant K. Dunn conducted the ISP investigation of the allegations against Plaintiff, and issued an investigative summary dated October 27, 2003. The investigative summary was used by the Will County prosecutor in the grand jury proceedings against Plaintiff. (3rd Am. Compl. ¶ 60). Plaintiff did not bring the cellular phones into the IDHS-TDF facility. (3rd Am. Compl. ¶ 41). However, Defendant Swafford told accused Plaintiff picked up the phones from the cellular store. (3rd Am. Compl. ¶ 38). Plaintiff alleges that Defendants Budz, Bratcher, Dorsey, Collins, Graham, and Williams, and other employees of the IDHS, supported and encouraged Defendant Swafford to make his false accusations of impropriety against Plaintiff, due to her complaints of harassment and her demonstrated willingness to testify at a commitment hearing on behalf of a resident, in order to impede, hinder, obstruct or defeat the due course of justice in certain judicial proceedings and the rights of the person for whom she was going to testify in a judicial proceeding, intending to deny such person the equal protection of the law. (3rd Am. Compl. ¶ 44).

---

[2] Plaintiff had been absent from work when she was placed on administrative leave, due to her work-related injury. (3rd Am. Compl. ¶ 37).

On November 26, 2003, a Will County grand jury indicted Plaintiff on two counts of official misconduct. (3rd Am. Compl., Exhibit A). On January 30, 2004, agents of the ISP arrested Plaintiff and charged her with two counts of official misconduct. (3rd Am. Compl. ¶¶ 53, 57).

On February 27, 2004, IDHS suspended Plaintiff, pending the resolution of the criminal charges against her. (3rd Am. Compl. ¶¶ 32, 59). Nearly one year later, on January 14, 2005, both counts of the criminal indictment against Plaintiff were dismissed. (3rd Am. Compl. ¶ 73). On that same day, the State issued a one-count superseding information charging Plaintiff with one count of official misconduct. On March 4, 2005, the superseding information was dismissed with prejudice for failing to state an offense. (3rd Am. Compl. ¶¶ 32-33, 74-75).

Despite the dismissal of the criminal indictment against Plaintiff, she has not returned to work since being placed on administrative leave on May 13, 2003. (3rd Am. Compl. ¶ 76). Plaintiff was subjected to a pre-disciplinary hearing on April 15, 2005, for eleven violations of the IDHS employee handbook and detention facility policy and was given a list of the alleged violations, which included: "failure to ensure no cellular phone was allowed to residents, failure to maintain appropriate employee interaction, failure to conduct oneself in a professional manner, and conduct that affected the operations of the facility." (3rd Am. Compl. ¶ 76).

There were two interrelated conspiracies between the State Defendants and individual Defendants Swafford and L. Dunn against Plaintiff. First, Defendants Budz, Bratcher, Dorsey, Collins, Graham, and Williams, and other employees of the IDHS supported and encouraged Swafford to make these false accusations of impropriety against Plaintiff due to her complaints of harassment and her demonstrated willingness to testify at the detention hearing on behalf of a

6

resident. This was done in order to impede, hinder, obstruct or defeat the due course of justice in certain judicial proceedings and the rights of the person for whom she was going to testify in a judicial proceeding, intending to deny such person the equal protection of the law. (3rd Am. Compl. ¶¶ 36-52). Second, Defendants Budz and Bratcher conspired with Defendant K. Dunn and individual Defendants Swafford and L. Dunn to press charges against Plaintiff for official misconduct without probable cause and with malice and to fabricate evidence in support of the criminal charges against Plaintiff to intimidate her and to create cause for her eventual termination, to cause emotional distress severe enough to make Plaintiff leave her employment, to deprive Plaintiff of her right to a fair trial, and to tarnish her good name and reputation. (3rd Am. Compl. ¶¶ 53-79).

## LEGAL STANDARD

In reviewing a motion to dismiss, the court considers all allegations in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A filing under the Federal Rules of Civil Procedure should be "short and plain," and it suffices if it notifies the defendant of the principal events. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9 (Pleading Special Matters, *i.e.*, fraud, mistake, etc.). *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 713 (7th Cir. 2006) (*Kolupa*). In other words, any movant "tempted to write 'this complaint is deficient because it does not contain . . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Kolupa*, 438 F.3d at 713, *quoting Doe v.*

7

*Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Documents that are referred to in a complaint and are central to a claim, as well as any matters of public record, may be considered on a motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994).

## ANALYSIS

The State Defendants assert that all counts of the Plaintiff's Complaint should be dismissed. Specifically, the State Defendants assert that: (1) Count I of the Complaint fails to state a claim that Defendant Budz violated Plaintiff's First Amendment rights; (2) Counts II, III, and IV of the Complaint are time barred; (3) Counts II, III, IV, VII, VIII, and IX fail to state a claim that the State Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment; (4) Counts V, VI, XV, and XVI fail to state claims that violations of Plaintiff's substantive due process rights occurred; (5) this Court lacks jurisdiction over Plaintiff's state law claims in Counts X, XI, XII, XIII, XIV, and XVII of the Complaint; (6) Count X should be dismissed because Plaintiff fails to state a claim under Illinois law for malicious prosecution against Defendant K. Dunn; (7) Counts XII, XIII, XIV, and XVI of the Complaint fail to state claims that Defendant Budz violated Plaintiff's state law rights; and, finally, (8) Plaintiff did not engage in "Whistle Blower" activity protected by the Illinois State Officials and Employees Ethics Act.

*Failure to State a Claim That Defendant Budz Violated Plaintiff's First Amendment Rights*

The State may not discharge an employee on a basis that "infringes upon that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). To establish a claim of employment retaliation in violation of the First Amendment,

8

a public employee must show that (1) her speech was constitutionally protected under the circumstances, and (2) her employer retaliated against her because of the speech. *Button v. Kibby-Brown*, 146 F.3d 526, 529 (7th Cir. 1998). Determining whether speech by a public employee is constitutionally protected is a two-step process. The first step is to determine, in light of the content, form, and context of the speech, whether the employee speaks "as a citizen upon matters of public concern." *Connick v. Myers*, 461 U.S. 138, 147 (1983). The second step is to balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Here, the Plaintiff pleads that her speech was constitutionally protected because it concerned a resident of IDHS-TDF. This the State Defendants do not contest. The State Defendants assert, however, that Count I fails to state a claim against Defendant Butz for First Amendment retaliation as a matter of law because Plaintiff admits that she did not actually utter any speech prior to the dates on which she was allegedly retaliated against. The State Defendants assert that in order to state a First Amendment claim, an employee's protected speech must precede the employer's act of retaliation; and Plaintiff's Third Amended Complaint states that she did not actually utter any speech until February 15, 2006 – well after she was placed on administrative leave on May 13, 2003, suspended on February 27, 2004, and terminated in May of 2005.

First Amendment jurisprudence protects against prior restraints on speech. *E.g.*, *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988). Count I of Plaintiff's Complaint pleads, "Defendant Budz retaliated against her by placing her on administrative leave and by

9

suspending her because of Plaintiff's lawful and constitutionally protected *attempts* to answer truthfully under subpoena." (3rd Am. Compl. at p. 15) (emphasis added).

As pled, the Complaint states a claim of retaliation for the exercise of a constitutional right. Thus, the Defendants' Motion to dismiss Count I for failure to state a claim is denied.

### Statute of Limitations – Counts II, III, and IV

The State Defendants assert that the facts pled in Counts II, III, and IV have the effect of pleading the Plaintiff out of court under the two-year statute of limitations applicable to claims under Section 1983 and 1985(3). *Tregenza v. Great American Communications*, 12 F.3d 717, 718 (7th Cir. 1993).

Here, Plaintiff asserts in her Complaint that she informed her supervisors that she would truthfully answer any question asked. Plaintiff's Complaint asserts that Defendants Collins' and Graham's threats in this regard were on-going and lasted throughout her employment at the facility. (3rd Am. Compl. ¶ 28). As the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) is only appropriate if the cause of action is undisputedly time-barred. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). Here, there are factual issues presented by the State Defendants not subject to resolution by a motion to dismiss.

### Failure to State a Claim - Equal Protection Clause

The State Defendants' motion argues that Plaintiff's Counts II, III, IV, VII, VIII, and IX fail to state claims that Plaintiff's right to be free of gender discrimination under the Equal Protection Clause of the Fourteenth Amendment was violated by the State Defendants. The State Defendants assert that these counts state only that Plaintiff's First and Fourteenth Amendment

10

rights were violated because Plaintiff is a woman and that the Complaint does not make reference to other similarly-situated individuals outside of her protected class who were treated more favorably.

However, at the pleading stage, a plaintiff must only claim that she was purposefully discriminated against due to her membership in a protected class. *Forrester v. White*, 846 F.2d 29, 32 (7th Cir. 1988), *rev'd on other grounds*, 404 U.S. 219 (1988). As stated above, Plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9, which are not applicable here. *Kolupa*, 438 F.3d at 713.

The State Defendants' Motion to Dismiss the Equal Protection claims in Counts II, III, IV, VII, VIII, and IX for failure to state a claim is denied.

*Failure to State a Claim - Substantive Due Process*

The State Defendants argue that Counts V, VI, XV, and XVI fail to state claims that violations of Plaintiff's substantive due process rights occurred. The State Defendants rely on *Albright v. Oliver*, 510 U.S. 266 (1994), in which the Court concluded that "substantive due process may not furnish the constitutional peg on which to hang such a 'tort'" for the dismissal of Counts V and VI (and, by extension of *Albright*, Counts XV and XVI, which allege conspiracy).

Although the Seventh Circuit "has yet to explicitly recognize a potential constitutional right to be free from prosecution based on evidence fabricated by the government where no trial is held or guilty plea is entered," the Seventh Circuit has "recognized that a due process violation can occur when no trial takes place. *See United States v. Salerno*, 481 U.S. 739, 746-52, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). *Fox v. Tomczak*, 04-C-7309, 2006 WL 1157466, *2 (N.D. Ill., Apr. 26, 2006). Here, Plaintiff's Third Amended Complaint claims that evidence was

11

intentionally fabricated by the State Defendants and that these actions interfered with her right to be free from prosecution. These allegations sufficiently state a claim.[3] The State Defendants' Motion to Dismiss the substantive due process claims raised in Counts V, VI, XV, and XVI is denied.

*Jurisdiction over the State Law Claims*

The Plaintiff's Complaint claims that this Court has jurisdiction over Count X (malicious prosecution against Defendant K. Dunn), Count XI (malicious prosecution against Defendant Budz), Count XII (interference with employment relations against Defendant Budz), Count XIII (intentional infliction of emotional distress against Defendant Budz), Count XIV (defamation against Defendant Budz), and Count XVII (whistle blower protection against Defendants Budz, Collins, and Graham) pursuant to 28 U.S.C. § 1367. The State Defendants assert that this Court lacks jurisdiction over the conduct alleged in these counts because, generally, where a charged act of negligence arises out of a State employee's breach of a duty

---

[3] The State Defendants assert that the *Newsome* and *Brady* decisions do not provide redress for alleged *grand* jury-based misconduct, citing *United States v. Williams*, 504 U.S. 36, 51-53 (1992) (*Williams*), and argue that Counts V and VI should be dismissed for this reason. The Court in *Williams* held that a prosecutor – and, by logical extension, a prosecutor's agents – has no duty to disclose exculpatory evidence, even if substantial, to the grand jury when seeking a criminal indictment. The State Defendants assert that Counts V, VI, XV, XVI fall within the ambit of *Williams* because the Third Amended Complaint states that the State Defendants "knowingly fabricated evidence against Plaintiff which had the reasonable likelihood of affecting the judgment of *the jury*." (3rd Am. Compl. Counts V and VI) (emphasis added). In isolation, this statement could be read to refer to the fabrication of evidence to unfairly influence the Will County grand jury, as the charges against Plaintiff were dismissed before the criminal prosecution against her could proceed to a trial on the merits. However, while the failure to disclose exculpatory evidence to the grand jury may fail to state a claim pursuant to *Williams*, a reading of the Third Amended Complaint in its entirety and in context reveals that Plaintiff states a claim in Counts V and VI for prosecution on deliberately fabricated evidence generally and not in the limited context resulting from Defendants' narrow construction of Plaintiff's Complaint.

imposed solely by virtue of State employment, sovereign immunity will bar maintenance of the action in court, citing *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002).

Again, these Defendants raise issues of fact – i.e, whether the breach of duty is imposed on the State Defendants solely by virtue of their State employment – this is not now properly considered. The State Defendants' Motion to Dismiss the state law claims raised in Counts X, XI, XII, XIII, XIV, and XVII is denied.

*Failure to State a Claim for Malicious Prosecution*

Count X of the Complaint alleges that Defendant K. Dunn "maliciously fabricated evidence which was the basis for a probable cause finding and for the institution of a judicial proceeding that was ultimately terminated in Plaintiff's favor." (3rd Am. Compl. at Count X). Specifically, Plaintiff alleges that Defendant K. Dunn knowingly fabricated evidence that the Will County State's Attorney used to obtain a grand jury indictment against Plaintiff on November 26, 2003, and gave false testimony in front of the grand jury. (3rd Am. Compl. ¶¶ 60-65, Exhibit A). The State Defendants assert that, "Plaintiff must plead facts that show: (1) the commencement or continuance of an original criminal or civil judicial proceeding by K. Dunn; (2) the termination of that proceeding in Plaintiff's favor; (3) the absence of probable cause for such proceedings; (4) the presence of malice; and (5) as a result, Plaintiff sustained damages." (State Defs' Motion to Dismiss at 12). Once again, however, the State Defendants fail to understand that at this stage, the Plaintiff in federal court need not plead facts nor elements of a claim. The Plaintiff need only notify the Defendants of the principal events that form the basis of the claim. The State Defendants' Motion to Dismiss Count X for failure to state a claim under Illinois law for malicious prosecution against Defendant K. Dunn is denied.

13

*Failure to State a Claim that Defendant Budz Violated Plaintiff's State Law Rights*

The State Defendants assert that Counts XII, XIII, XIV, and XVI of the Complaint fail to state claims that Defendant Budz violated Plaintiff's state law rights. The State Defendants assert that Defendant Budz is entitled to absolute public official immunity against the claims asserted in Counts XII and XIV, *citing Morton v. Hartigan*, 145 Ill.App.3d 417, 422-23 (1st Dist. 1986). Defendant Budz argues he is absolutely immune for discretionary supervisory decisions, such as the termination of subordinates, as well as for statements made within the scope of his authority, even if the statements are defamatory. Whether Defendant Budz's actions were discretionary and within the scope of his authority are issues of fact not appropriately resolved on a motion to dismiss. The State Defendants' Motion to Dismiss Counts XII, XIII, XIV, and XVI of the Complaint is denied.

*Illinois State Officials and Employees Ethics Act*

Finally, the State Defendants assert that Plaintiff did not engage in "whistle blower" activity protected by the Illinois State Officials and Employees Ethics Act. Section 15 of the State Officials and Employees Ethics Act, 5 ILCS 430/1, *et seq.*, governs Whistle Blower Protection. Section 15-10 of the Ethics Act provides that:

> An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee does any of the following: (1) Discloses or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation.
> (2) Provides information or testifies before any public body conducting an

14

investigation, hearing, or inquiry into any violation of law, rule, or
regulation by any officer, member, State agency, or other State employee.
(3) Assists or participates in a proceeding to enforce the provisions of this
Act.

5 ILCS 430/15-10. The Plaintiff's Third Amended Complaint alleges that she informed the State Defendants that she intended to disclose information about the activities of IDHS facility leadership that Plaintiff believed to be in violation of law, rule or regulation. It also alleges that Plaintiff was told not to testify by supervisors conspiring with Defendant Budz at a trial in which many of the same criticisms would be voiced, satisfying the requirements of both subparagraphs (1) and (2) of the Act.

This sufficiently states a whistle-blowing claim. The State Defendants' Motion to Dismiss Count XVII for failure to state a claim under the Illinois State Officials and Employees Ethics Act is denied.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Third Amended Complaint filed on behalf of the State Defendants – Tim Budz, Joe Dorsey, Doug Collins, Jack Graham, Angela Bratcher, Kenneth Dunn, and Tarry Williams, in their individual and official capacities – is denied.

Dated: March 14, 2007

JOHN W. DARRAH
United States District Court Judge

15